# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SALVADOR OCHOA, FILIBERTO
RICARDO, MIRIAM MEDINA,**

**Plaintiffs,**

**-vs-**                                                  **Case No.  6:06-cv-609-Orl-DAB**

**ALIE BROTHERS, INC., d/b/a Fabri-kleen
Textile Services, RAYMAN ALIE,**

**Defendants.**

_____

# MEMORANDUM OF DECISION

This cause came on for trial before the undersigned[1] on September 4, 2007.  For the reasons

set forth below, the Court renders verdicts in favor of Plaintiffs against Defendants jointly and

severally as follows: Ochoa for $42,726, Ricardo for $27,206, and Medina for $8,540.

Plaintiffs filed this action to recover unpaid overtime wages from Defendants pursuant to the

Fair Labor Standards Act of 1938 (hereinafter referred to as "FLSA"), 28 U.S.C. § 201 *et seq*.

Plaintiffs filed their Complaint against Defendants on May 5, 2006.  Doc. 1.  Plaintiffs claimed that

they performed overtime work while employed by Defendants for which they were either partially

compensated or were not compensated at all.  Plaintiffs contended that Defendants required Plaintiffs

to complete false time records in order to thwart the overtime provisions of the FLSA.

Defendants deny Plaintiffs worked overtime and did not work any hours beyond those hours

(uniformly under 40 hours) recorded on their respective time sheets.  Defendants also argued that

Plaintiff were not employees "engaged in commerce" covered by the overtime provisions of the

---

[1]This case was originally assigned to Chief Judge Fawsett; following the parties' consent the case was reassigned to this Court on August 20, 2007.  Doc. Nos. 36, 37.

FLSA.  Rayman Alie argued he was not involved in the day to day operations and subject to the FLSA as an "employer."

At trial, Plaintiffs offered their testimony, the testimony of former controller Garth Douglas, and the testimony of Defendant Rayman Alie.  Based on this testimony and the exhibits admitted into evidence, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

**FINDINGS OF FACT**

Rayman Alie, sole shareholder and president of Alie Brothers, Inc. d/b/a Fabri-Kleen Textile Services ("Alie Brothers") started a commercial laundry business in Orlando, Florida in June 1990.  Alie Brothers' customers included hotels, airlines, and theme parks, such as the Courtyard Marriott, Embassy Suites Hotel, JetBlue Airlines, and Wet N Wild water park; gross sales exceeded $500,000 in the relevant time period.[2]  Alie Brothers employed between thirty and fifty employees during that time.  Alie Brothers used long-distance telephone carriers and the mail to conduct its business.  The business has since relocated to Daytona Beach, organized as a separate corporation.  Payroll records and programs from the Orlando operation were destroyed when new computers were placed in service.  Defendants offered no explanation for the failure to maintain the previously created electronic records.

Rayman Alie, as president, ran the company, assisted in administration by his sister, Theresa Alie, and by part-time comptroller, Garth Douglas (who left in 2006).  Mr. Alie on a regular basis would check on Plaintiffs' work in the production department; he would give Plaintiffs orders to do work, check positions, give instructions, correct employees' work, and generally act the same as

_____

[2]Plaintiff filed suit in May 2006 seeking unpaid overtime from May 2003 to present.

Plaintiffs' supervisor.  Mr. Alie did not research legal issues related to overtime before hiring employees.

All three Plaintiffs worked in the production department.  All three Plaintiffs always received two checks for their pay each week[3] and the total amount they were paid each week matched the total amount of hours they calculated they were due, so they did not retain separate records.  However, all three were paid straight time, rather than time and a half, for their overtime hours.

Plaintiff Miriam Medina worked as a linen folder for Defendants from October 26, 2004 to December 10, 2004, usually working the second and third shift for an average number of hours between 50 and 70 hours per week (or an average of 60 hours), at a rate of $7.00 per hour.  *See* Pl. Ex. 2 (hourly rate and term of employment).

Plaintiff Salvador Ochoa (Cabrera) worked as a linen washer from October 1999 to December 2005.  From May 2003 to June 2004, he was paid at a rate of $7.50 per hour; from July 2004 to December 2004, he was paid at a rate of $8.00 per hour and from July 2005 to December 2005, he was paid at a rate of $9.00 per hour.  *See* Pl. Ex. 1 (hourly rates and terms of employment). With the exception of January 2005 to July 2005, Plaintiff typically worked two shifts six days per week and averaged 70 to 80 hours per week.  From January 2005 through July 2005, Ochoa earned a salary of $450.00 per week (*id.*); although Ochoa was doing the exact same work, Plaintiff was paid salary for 40 hours per week even though he worked an average of 60 hours per week; he also worked for another employer as a plumber's assistant.

---

[3]For short periods of time when they were purportedly on salary, Mr. Ochoa and Mr.Ricardo received single weekly checks.

Plaintiff Filiberto Ricardo (Greenhalba) worked for Defendants as a linen washer from February 2004 to November 2005.  From February 22, 2004 to December 2004, he was paid a rate of $8.00 per hour; from July 2005 to August 2005 and October 2005 to November 2005, he was paid at a rate of $8.50 per hour.  *See* Pl. Ex. 3 (hourly rates and terms of employment). Ricardo usually worked two shifts for an average number of hours of 70 to 80 hours per week.  From January 2005 to June 2005, although Ricardo was doing the exact same work, he was paid a salary of $450.00 per week for 40 hours per week (and no overtime) even though he worked an average of 60 hours per week.

Mr. Douglas, who served as part-time comptroller[4] from 1999 to 2006, was responsible for producing Alie Brothers' payroll checks, although he did not have the authority to sign the payroll checks.  He personally produced a single payroll check each week for each employee based on a one-page time card report for each employee for each pay period.  However, as Plaintiffs testified, Alie Brothers paid each of the Plaintiffs with two checks each week, one payroll check for the hours worked under approximately forty hours[5], and a second check for the hours worked over forty hours but paid at the Plaintiffs' hourly wage rate rather than at the time and a half overtime rate.[6]  Although Mr. Douglas was responsible for the weekly payroll entries to produce the checks, he was unaware of how the "second" set of checks[7] came to be issued for additional payroll; these "second" checks were signed by Rayman Alie and his sister, Theresa Alie, but never by Mr. Douglas. *See* Pl. Ex. 7 and

---

[4]Although Mr. Douglas held the title of "comptroller," he was part-time for most of his tenure and was not responsible for reconciling bank statements or the general ledger.

[5]The amount varied each week, but was within 38 to 40 hours, rather than a flat 40 hours every week, which might otherwise have aroused suspicion.

[6]Two of the Plaintiffs received salaries for six-month periods and received no overtime at all during those periods.

[7]The checks were produced by Alie Brothers' bank, Bank of America, and not by Defendants. *See* Pl. Ex. 7 - 7e, 8.

-4-

subparts.  The "second" payroll checks also accorded with the hours listed on a time card hours

summary with multiple pages that Mr. Douglas had never seen while employed with Alie Brothers.

*See* Pl. Ex. 5.  The payroll checks Mr. Douglas produced with the QuickBooks software had a notation

in the memo line of each check that stated the week and "pay period" which was automatically

generated.  The second checks stated just the dates and did not say "pay period."  *Compare* Pl. Ex.

7- 7e, 8.  The gap in the check numbers also indicates that they were generated out of sequence with

the regular payroll checks to Plaintiffs.  *Id*.

When Plaintiff Ochoa occasionally objected to the reduced number of hours on the time card

sheet he was asked to sign, he was told to sign the time card or he would not get a check.  He signed

the incorrect time sheet, and he was paid for the full number of hours without a problem.  Plaintiff

Ricardo was also told that if he did not sign his time card (with the reduced hours) he would not be

paid for the hours he worked.  Defendants produced in discovery a mix of the single-page and multi-

page payroll reports listing hours over 40 hours and failed to produce the "second" payroll checks,

which Plaintiffs obtained from Defendants' bank.

### CONCLUSIONS OF LAW CONCERNING THE FLSA

Plaintiff seeks to hold Defendants liable for violation of the overtime provision of the Fair

Labor Standards Act, 29 U.S.C. §§ 206(a), 207(a) ["FLSA"].  An employer must pay one and one-half

times the employee's regular rate for all hours worked in excess of forty hours per work week.  29

U.S.C. § 207(a).  Plaintiffs bear the burden of proving by a preponderance of the evidence: 1) the

existence of an employment relationship; 2) that they were employees engaged in commerce or

employed by an "enterprise" engaged in commerce; 3) that Defendants failed to pay them overtime

required by the FLSA; and 4) they are owed the amount claimed by a just and reasonable inference.

*See* 29 U.S.C. §§ 207(a); *see also* ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES) (2005) at 173.

*Employers*

Plaintiffs seek to hold Alie Brothers, Inc. and Rayman Alie personally liable as their "employers" under the FLSA. They therefore bear the burden of proving the employment relationship as to both Defendants. The Eleventh Circuit has explained that in applying the "economic reality test" to determine whether a particular defendant was an "employer" within the meaning of the FLSA, the Court may look at several factors, including whether the alleged employer: 1) had the power to hire and fire the employees; 2) supervised and controlled the employees' work schedules or conditions of employment; 3) determined the rate and method of payment; and 4) maintained employment records. *Villareal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997).

Further, corporate officers with "significant operational control of a corporation's day-to-day operations, including compensation of employees," are employers within the meaning of the FLSA. *Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986); *Michaud v. U.S. Steakhouse Bar and Grill, Inc.*, 2007 WL 2572197, *5 (Sep. 5, 2007). The Eleventh Circuit has further stated: "To be personally liable, an officer must be either involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Patel*, 803 F.2d at 638.

Alie Brothers did not dispute that it employed Plaintiffs. Although Rayman Alie disputed that he was sufficiently involved in the operation to be held liable for Plaintiffs' overtime, the Court finds more credible Plaintiffs' testimony that, on a regular basis, Alie would check on Plaintiffs' work in the production department; he would give Plaintiffs orders to do work, check positions, give

-6-

instructions, correct employees' work, and generally act the same as Plaintiffs' supervisor. Rayman

Alie is an "employer" for purposes of the FLSA and liable for Plaintiffs' overtime due.

*Enterprise Coverage*[8]

Plaintiffs contend that Alie Brothers meets the requirements for "enterprise coverage." In

order for employers to be required to pay overtime compensation, employees must be "engaged in

commerce or in the production of goods for commerce, or . . . employed in an enterprise engaged in

commerce." 29 U.S.C. § 207(a)(1). An employee is covered if the employee can establish either the

employee is engaged in commerce (individual coverage) or the employer is an enterprise engaged in

commerce (enterprise coverage). 29 U.S.C. § 203(b), (s); *Thorne v. All Restoration Svcs., Inc.*, 448

F.3d 1264, 1265-66 (11th Cir. 2006). The FLSA defines an "enterprise engaged in commerce" as an

enterprise with annual gross revenue of $500,000 or greater. 29 U.S.C. § 203(s); *Chao v. A-One

Medical Services, Inc.*, 346 F.3d 908, 914 (9th Cir. 2003).

Alie Brothers' only defense concerned individual coverage – that Plaintiffs individually were

not "engaged in interstate commerce" citing *Sobrinio v. Medical Center Visitor's Lodge*, 474 F.3d 828

(5th Cir. 2007) – which is an alternative to "enterprise" coverage (and not argued by Plaintiffs). The

legislative history of the FLSA and the case law demonstrate that the "enterprise" analysis was

included in the FLSA to expand the scope of coverage of the statute. *Patel v. Wargo,* 803 F.2d 632,

636 (11th Cir. 1986). The enterprise provisions of the FLSA became law as part of the Fair Labor

Standards Amendments of 1961. *Id*. "Prior to 1961, coverage under the Act was determined

exclusively on an employee-by-employee basis. The Act's coverage extended 'only to those

---

[8]Although the determination of enterprise coverage must be resolved on the facts of each case, it is a question of law. *Kitchings v. Florida United Methodist Children's Home, Inc.,* 393 F.Supp.2d 1282, 1293 n.27 (M.D. Fla. 2005) (citing *Donovan v. Weber*, 723 F.2d 1388, 1391-92 (8th Cir. 1984)).

individual employees who [could] be proved to be personally engaged in interstate commerce or in the production of goods for interstate commerce.' " *Montalvo v. Tower Life Building,* 426 F.2d 1135, 1139 (5th Cir.1970) (citing legislative history).  Enterprise coverage was "a new type of coverage," *id.,* pursuant to which all the employees of an employment unit which "falls within the ambit of the Act," *id.,* are covered by the FLSA.

Rayman Alie admitted that Alie Brothers had revenues exceeding $500,000 for the period in question (May 2003 to May 2006); thus, Alie Brothers qualified as an "enterprise engaged in commerce" for the time period at issue and its employees are covered by the protections of the FLSA.

*Overtime Wages*

Employees bringing suit for overtime wages under the FLSA have the burden of proving that they performed work for which they were not properly compensated.  *Anderson*, 328 U.S. at 687 (1946).  Where the employer's time and pay records are inadequate or nonexistent, the employees may satisfy their burden by proving that they have in fact performed work for which they were improperly compensated.  Once the employees produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference, the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employees' evidence.  *Anderson*, 328 U.S. at 687-88.

The employer is liable for compensating an employee for all hours that the employer "suffer[s] or permit[s] [the employee] to work."  29 U.S.C. §203(g).  A rule against compensating for unauthorized overtime is not enough to avoid liability where the employer knows of the hours worked and takes no action to enforce its rules.  *See Reich v. Dep't of Conservation & Natural Res., State of*

*Ala.*, 28 F.3d 1076 (11th Cir. 1994).  If the employer violates the overtime provisions of the FLSA, the employer is liable for the unpaid amounts, and an additional equal amount as liquidated damages. 29 U.S.C. § 216(b).

Precisely calculating Plaintiffs' damages in this case is difficult, because Defendants have failed to produce accurate and comprehensive records of Plaintiff's employment and took steps to have two sets of records prepared.  Although it appears that Defendants did maintain such records at some point, they did not produce a comprehensive set of such records.  Defendants produced in discovery a mix of the single-page and multi-page payroll time sheet reports with just a few (apparently accidently) listing hours over 40 hours and Defendants' bank produced a handful of the "second" payroll checks for Plaintiffs.  Defendants have failed to bring forth evidence of the precise amount of overtime Plaintiffs worked.

At some point after the Plaintiffs' employment, Alie Brothers relocated to Daytona Beach and disposed of all the equipment, computers and software, from the Orlando operation.  Plaintiffs did not separately raise the spoliation issue and the Court does not address it here, except to the extent Defendants have failed to meet their burden to produce accurate record of Plaintiffs' overtime.

FLSA and its implementing regulations require an employer to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by [the employer]." 29 U.S.C. § 211(c). Although employees seeking to recover overtime under FLSA have the burden of proving that they worked overtime without compensation, "[t]he remedial nature of this statute and the great public policy which it embodies . . . militate against making that burden an impossible hurdle for the employee." *Allen v. Board of Public Educ. for Bibb County*, __ F.3d __, 2007 WL 2332506, *6 (11th Cir. Aug. 17, 2007) (citing *Anderson*

-9-

*v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). However, it is the employer's duty to keep

records of the employee's wages, hours, and other conditions and practices of employment because

the employer is in a superior position to know and produce the most probative facts concerning the

nature and amount of work performed and "[e]mployees seldom keep such records themselves."

*Allen*, 2007 WL 2332506 at *6 (citing *Anderson*, 328 U.S. at 687).

If an employer fails to maintain records concerning the employee's wages, hours, and other

terms and conditions of employment as required by FLSA and the employee cannot offer convincing

substitutes,

> "[t]he solution ... is not to penalize the employee by denying him any recovery on the
> ground that he is unable to prove the precise extent of uncompensated work. Such a
> result would place a premium on an employer's failure to keep proper records in
> conformity with his statutory duty; it would allow the employer to keep the benefits
> of an employee's labors without paying due compensation as contemplated by the Fair
> Labor Standards Act." *Id.* Thus in situations where the employer's records cannot be
> trusted and the employee lacks documentation, the Supreme Court held "that an
> employee has carried out his burden if he proves that he has in fact performed work
> for which he was improperly compensated and if he produces sufficient evidence to
> show the amount and extent of that work as a matter of just and reasonable inference."
> *Id.* The burden then becomes the employer's, and it must bring forth either evidence
> of the precise amount of work performed or evidence to negate the reasonableness of
> the inference to be drawn from the employee's evidence. *Id.* at 687-88. "If the
> employer fails to produce such evidence, the court may then award damages to the
> employee, even though the result be only approximate." *Id.* at 688.

*Allen*, 2007 WL 2332506 at *7 (quoting *Anderson*, 328 U.S. at 687-88).

When Plaintiffs objected to the reduced number of hours on the time cards, they were told to

sign their time cards or threatened that their checks would be withheld.

Defendants have certainly not negated the reasonableness of Plaintiff's testimony regarding

the overtime they worked.  To the contrary, the random overtime records Defendants *did* (apparently

accidently) produce support Plaintiff Medina's testimony that she consistently worked an average of

60 hours, or twenty hours of overtime virtually every week. *Compare* Pl. Ex. 5 at 1 (purporting to show Medina worked only 38.01 hours from 10/11/04 to 10/17/04) *with* Pl. Ex. 5 at 2 (showing Medina really worked 58.26 hours from 10/11/04 to 10/17/04); *see also* Pl. Ex. 5 at 3, 4, 5, 8 (consistently showing at least 53 hours on the time records actually produced).

The unexplained variations in paginations for the single page and multi-page payroll reports that Defendants produced for Plaintiff Ochoa support his testimony of understated time card reports and a separate bookkeeping system for those hours exceeding forty per week. *See, e.g.*, Pl. Ex. 7b at 1-2 (check for $289.68 for "10/18/04 to 10/24/04 Pay period" and second check for $267.68 for "10/18/04 to 10/24/04"). In addition, Mr. Douglas testified that all of the reports he used to generate payroll checks were single-page reports marked "page 1 of 1" and there are numerous time card reports that he did not use to generate payroll checks – but second checks were produced – that were marked as multi-page reports. *Compare* Pl. Ex. 4 at 1 (marked "page 1 of 1") *with* Pl. Ex. 4 at 2 (marked "page 25 of 31"). The same is true for the time clock records of Plaintiff Ricardo. *See, e.g.*, Pl. Ex. 6 at 1 ("page 22 of 83"); *id.* at 4 ("page 16 at 54").

The existence of two sets of checks for the same pay periods and the unexplained report differences support Plaintiff Ochoa's testimony that he consistently worked thirty hours of overtime virtually every week. *See* Pl. Ex. 7c (two sets of checks for same time period); Ex. 7d (same). It also supports Plaintiffs' claims that Defendants have not acted in good faith in paying Plaintiffs straight time for the overtime hours worked.

*Willful Violation*

Plaintiffs filed suit in May 2006, seeking unpaid wages since May 2003, or overtime for work performed three years prior. The FLSA's statute of limitations provides that a claim for unpaid wages

-11-

which is not commenced "within two years after the cause of action accrued . . . shall be forever

barred . . . except that a cause of action arising out of a willful violation may be commenced within

three years after the cause of action accrued." 29 U.S.C. § 255(a); *see Alvarez Perez v.*

*Sanford-Orlando Kennel Club, Inc*., 469 F.Supp.2d 1086, 1092-93 (M.D. Fla. 2006).  An employer's

violation of the FLSA is willful if it "either knew or showed a reckless disregard for the matter of

whether its conduct was prohibited by the statute."  *Id*. at 1093 (citing *McLaughlin v. Richland Shoe*

*Co.*, 486 U.S. 128, 133 (1988)).   Defendants' willful violation of the FLSA is supported by

Defendants' use of separate time card reports and two sets of checks for the same pay periods. *See*

Pl. Ex. 7c (two sets of checks for same time period), Ex. 7d (same).

   *Liquidated Damages*

   Defendants contend that they should not be liable for liquidated damages because Plaintiffs

were properly paid for all hours worked.   *See* Doc. No. 38.   An employer who seeks to avoid

liquidated damages bears the burden of proving that its violation was "both in good faith and

predicated upon such reasonable grounds that it would be unfair to impose upon him more than a

compensatory verdict." *Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987) (quoting *Reeves*

*v. International Tel. & Tel. Corp.,* 616 F.2d 1342, 1352-53 (5th Cir. 1980)); *Miller v. Paradise of Port*

*Richey, Inc.,* 75 F.Supp.2d 1342, 1344 (M.D. FLA. 1999) (the law is well settled in the Eleventh

Circuit that a prevailing plaintiff is entitled to a mandatory award of liquidated damages unless the

district court explicitly finds that the defendant acted in good faith in violating the Fair Labor

Standards Act).   An employer, who knew or had reason to know that the FLSA applied, cannot

establish good faith as a defense. *Joiner*, 814 F.2d at 1539 (citing *Reeves,* 616 F.2d at 1352-53).

Liquidated damages are mandatory absent a showing of good faith. *Joiner*, 814 F.2d at 1539 (citing

*EEOC v. First Citizens Bank of Billings,* 758 F.2d 397, 403 (9th Cir. 1985)).

Based on the testimony at trial, Defendants failed to show that they acted in good faith and

with reasonable grounds to believe that they were not subject to the overtime provisions of the FLSA.

Rayman Alie testified that he never researched the overtime provisions of the law before hiring

employees.  He also testified, rather unconvincingly, that Plaintiffs Ochoa and Ricardo were placed

on salary for six months in 2005 because their duties were changed to "supervisory."  They were

returned to an hourly rate (without explanation) after the six months.  The evidence presented at trial

demonstrates that Defendants acted recklessly and without regard to Plaintiffs' rights under the FLSA;

thus, Plaintiffs are entitled to liquidated damages in an amount equal to the overtime owed.

*Damages Award*

Under the FLSA, Plaintiff is entitled to be compensated for one and one-half times his regular

rate for all hours worked in excess of forty hours per work week, 29 U.S.C. § 207(a).  Based on the

Court's findings of fact and conclusions of law, the Court awards damages as follows:

| Name | Time Period | Overtime Hours | Number of Weeks | Hourly Rate | Overtime or Half-time rate | **Total Overtime Due** | **Total Liquid. Damages** | **TOTAL** |
|---|---|---|---|---|---|---|---|---|
| **Medina** | 10/04-12/05 | 20 | 61 | 7.00 | 3.50 | 4,270 | 4,270 | **8,540** |
| | | | | | | | | |
| **Ochoa** | 5/03-6/04 | 30 | 56 | 7.50 | 3.75 | 6,300 | 6,300 | 12,600 |
| | 7/04-12/04 | 30 | 30 | 8.00 | 4.00 | 3,600 | 3,600 | 7,200 |
| | 1/05-6/05 | 20 | 22 | 450/wk | 16.87[9] | 7,423 | 7,423 | 14,846 |
| | 7/05-12/05 | 30 | 30 | 9.00 | 4.50 | 4,050 | 4,050 | 8,100 |
| TOTAL | | | | | | | | **42,746** |
| | | | | | | | | |
| **Ricardo** | 2/04-12/04 | 30 | 43 | 8.00 | 4.00 | 5,160 | 5,160 | 10,320 |
| | 1/05-6/05 | 20 | 22 | 450/wk | 16.87[10] | 7,423 | 7,423 | 14,846 |
| | 7/05-8/05 | 30 | 4 | 8.50 | 4.25 | 510 | 510 | 1,020 |
| | 10/05-11/05 | 30 | 4 | 8.50 | 4.25 | 510 | 510 | 1,020 |
| TOTAL | | | | | | | | **27,206** |

---

[9]Overtime rate determined by multiplying by 1.5 the hourly rate ($11.25) determined from weekly salary of $450 divided by 40 hours per week.

[10]*See* n. 9, *supra.*

-14-

## CONCLUSION

Based on the testimony at trial and the other evidence presented, the Court renders verdicts in favor of Plaintiffs against Defendants jointly and severally as follows: Ochoa for $42,726, Ricardo for $27,206, and Medina for $8,540.  The Clerk of the Court is directed to enter judgment consistent with this opinion (awarding Plaintiffs costs of the action)  and, thereafter, to close the file.  The Court retains jurisdiction to award attorneys fees.  Plaintiffs may move for an award of fees within 14 days of the entry of judgment and shall comply with Local Rule 3.01(g) as to any such motion.

**DONE** and **ORDERED** in Orlando, Florida on September 19, 2007.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record